Tony Dewayne HUGHES *v.* STATE of Arkansas

CA CR 06-930 255 S.W.3d 891

Court of Appeals of Arkansas
Opinion delivered April 25, 2007

*William R. Simpson, Jr.*, Public Defender, and *Lloyd Warford*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Tony Hughes pleaded guilty to the Class Y felony of aggravated robbery but elected to have a jury decide his sentence. Hughes received a term of twenty-five years' imprisonment at his sentencing trial on April 10, 2006. He raises one point on appeal, contending that the trial court erred in denying his request to ask a venireperson whether she had a prior conviction for driving while intoxicated. We hold that the trial court did not abuse its discretion in denying this request.

During jury selection Hughes objected to the deputy prosecutor's use of a peremptory strike against Annette Hawkins. Hughes argued that the State was using "another strike to strike another black," that Hawkins had not given "any responses that

were negative to anyone," that strikes had already been used by the State against three-quarters of the blacks on the panel, and that the last strike would result in one-hundred percent of the blacks being stricken. The deputy prosecutor stated that its reason for the strike was that Hawkins had a prior conviction for driving while intoxicated. Hughes asked how the State knew of Hawkins's conviction, as she had not been questioned about it. The deputy prosecutor responded that the State had run "the ACIC, NCIC criminal history [Arkansas Crime Information Center and National Crime Information Computer] on the jurors." Hughes objected:

> Your Honor, if the State is going to be able to run an ACIC background check on everybody that's on the jury panel, then that information must be provided to the defense attorneys. We do not have access to that information.

The deputy prosecutor stated that the State did not intend to seat any jurors with prior convictions, and she informed the court that there were "no other people seated in that jury box which I can prove or show have arrests or convictions." Again protesting that the prosecution should have shared its ACIC information with the defense, Hughes argued that the prosecution could strike jurors for things that the defense was unaware of, such as potential jurors' arrests and "connections" with law enforcement. Hughes asked:

> Might I ask what year this happened in? We don't even know that this would be something she could be impeached with in a Court [much] less stricken. We know nothing about this. We would ask that she, we at least be able to inquire from her whether she was in fact convicted of a DWI.

In denying Hughes's motion, the court stated, "When the trial is over, I'm going to . . . let you see that information" to make his record on appeal.[1] At a posttrial hearing of April 25, 2006, the court stated

---

[1] The Pulaski County prosecutor appeared at the posttrial hearing to address not only the narrow issue of *Batson v. Kentucky*, 476 U.S. 79 (1986), but also what he called the broader and separate issue of "interpretation of the law as to access."

Asserting at the hearing that ACIC printouts themselves clearly were not releasable to defense attorneys, the prosecutor informed the court that in the future, upon proper inquiry, his office would disclose any information acquired about a potential problem with a juror when ACIC had been accessed. Hughes responded, "That was what we were actually asking for. At that time, we asked that both . . . that information be given to us then, and we also ask

that it had reviewed the prosecutor's materials and found that they revealed no other member of the venire with a criminal history.

Hughes contends on appeal that the trial court erred in denying his request to question Hawkins about whether she had a prior conviction for driving while intoxicated. Hughes asserts that Hawkins herself was the best source to determine whether she had a DWI conviction and to establish the truth about the conviction revealed through the ACIC check.

Rule 32.2 of the Arkansas Rules of Criminal Procedure provides the procedure for the conduct of proper voir dire in a criminal trial:

> (a) Voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges. The judge shall initiate the voir dire examination by:
>
> (i) identifying the parties; and
>
> (ii) identifying the respective counsel; and
>
> (iii) revealing the names of those witnesses whose names have been made known to the court by the parties; and
>
> (iv) briefly outlining the nature of the case.
>
> (b) The judge shall then put to the prospective jurors any question which he thinks necessary touching their qualifications to serve as jurors in the cause on trial. The judge shall also permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper.

The circuit judge is responsible for regulating and conducting voir dire, and the fact that the Rule permits such additional questioning as he or she deems proper underscores the discretion vested in the circuit judge. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006).

---

for the opportunity to voir dire the witnesses as to their criminal histories. . . . [A]nother concern for us is that the ACIC, at least in terms of arrest is quite often, more often that it should be, inaccurate."

The standard of review to be used when the voir dire process is challenged on appeal is as follows:

> The extent and scope of voir dire examination is within the sound discretion of the circuit judge, and the latitude of that discretion is wide. *See Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). The judge's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id.* Abuse of discretion occurs when the circuit judge acts arbitrarily or groundlessly. *See Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991).

365 Ark. at 391-92, 230 S.W.3d at 533. Rule 32.2 provides that the circuit judge is only required to ask questions of jurors that he or she believes are necessary and to permit attorneys to ask additional questions only if the circuit judge deems them reasonable and necessary. *Id.* The proper role of the trial judge is given great discretion to insure that no undue advantage is gained. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998).

Hughes asserts that Hawkins's answer under oath about whether she had a prior DWI conviction would have been important for two reasons. First, he asserts that, had she denied the conviction, her answer would have cast serious doubt upon the State's purported reason for peremptorily removing her from the jury. Second, he asserts that, had she admitted to the conviction and had it been only a misdemeanor, she would not necessarily have been disqualified from serving. *See* Ark. Code Ann. § 16-31-102(a)(4) (Supp. 2005) (convicted felons are generally disqualified to act as grand or petit jurors); § 5-65-111(b) (conviction for driving while intoxicated is a felony only upon four such convictions within five years of the first). We agree with the State that Hughes's allegations do not establish that the trial court abused its wide discretion by refusing to allow him to question Hawkins about whether she had been convicted of DWI.

 The trial court credited the deputy prosecutor's assertion that she had information about Hawkins's having a DWI conviction but not about other members of the venire, and on appeal Hughes does not challenge the credibility of her assertion. We agree with the State that, against this backdrop, any information that Hughes might have gleaned from questioning Hawkins about her conviction would not have impugned the prosecution's use of a peremptory challenge to excuse her from the jury. *See, e.g.,*

*Owens v. State,* 363 Ark. 413, 416-17, 214 S.W.3d 849, 851 (2005) (whether the prosecutor had discriminatory intent is the focus of a claim that the prosecution used its peremptory challenges to remove African-Americans from the jury).

In *Hinkston v. State,* 340 Ark. 540, 10 S.W.3d 906 (2000), our supreme court upheld the trial judge's finding of a race-neutral explanation for the State's peremptory strike against the only African-American member on the jury panel when the prosecutor explained that, although no formal charges were ever filed against the man, he had been investigated and had been a potential suspect known to the prosecutor and police for problems with methamphetamine. In the present case, if Hawkins had denied the DWI conviction, the deputy prosecutor's race-neutral reason for striking her would not have been invalidated because the State had ACIC information that she had been convicted. Nor would an affirmative answer from Hawkins have invalidated the deputy prosecutor's use of the peremptory strike because of the conviction. Furthermore, even if it is assumed that Hawkins's DWI conviction was a misdemeanor rather than a felony, which would not have prohibited her from jury service as a matter of law, the prosecution was not prohibited from using a peremptory challenge to strike her from the jury. Her conviction was a race-neutral reason for striking her and was believed by the trial court.

We hold that the trial court did not abuse its discretion by refusing to allow Hughes to question a member of the venire about her criminal history. Therefore, his sentence for aggravated robbery is affirmed.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.